**YOUNG–ROBINSON ASSOCIATES, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 91–0393–LFO.**

United States District Court, District of Columbia.

March 22, 1991.

Theresa L. Watson, Washington, D.C., Gregory Kellam Scott, Gray, Hahn & Brown, P.C., Denver, Colo., for plaintiff.

Stacy M. Ludwig, Sp. Asst. U.S. Atty., Washington, D.C. (Lieutenant Colonel Mark Sucher, U.S. Air Force, of counsel), for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff Young–Robinson Associates, Inc. ("Young–Robinson"), a minority-owned small business based in Montgomery, Alabama, contends that the Air Force improperly solicited an interim contract for warehousing services at Gunter Air Force Base

in Alabama as a small business set-aside when that contract should have been reserved for small socially and economically disadvantaged businesses ("SDBs"). Accordingly, on February 21, 1991, Young–Robinson filed the instant complaint and applied for temporary restraining order to, *inter alia,* enjoin performance of the interim contract and require the Air Force to solicit that contract as an SDB set-aside.

A hearing on Young–Robinson's application for a temporary restraining order was held on February 22, 1991. The argument of counsel and the limited record at that stage precluded any ruling upon plaintiff's application. Instead, an Order of February 27, 1991 treated the application as a motion for a preliminary injunction and scheduled another hearing. Two days before that hearing, the United States filed a response to Young–Robinson's motion and itself moved for summary judgment. The next evening plaintiff filed an opposition and a cross-motion for summary judgment in which it shifted the focus of its argument. No longer asserting that the interim contract clearly should have been solicited as an SDB set-aside, Young–Robinson argued instead that the primary issue was "whether the failure of a contracting officer to consider matters left to his discretion, but which matters must be considered by lawful regulation, constitutes a failure to comply with mandatory procedures and regulations." Plaintiff's Memorandum in Support of Its Cross–Motion for Summary Judgment at 1. At the hearing the next day, plaintiff's counsel also focused upon the possibility of procurement through the "8(a) Program," a Small Business Administration ("SBA") program designed to promote economically and socially disadvantaged small businesses, rather than a direct Department of Defense SDB set-aside. Because defendant's counsel was unable to respond adequately to these new arguments, further briefing was ordered.

Both parties have complied with that order, and the pending motions are now ripe for resolution.[1] For the reasons stated below, an accompanying order will grant defendant's motion for summary judgment and dismiss the complaint.

## I.

In order to succeed on its motion for summary judgment, the United States must "show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to determine which facts are material, it is first necessary to review pertinent Department of Defense procurement procedures.

## A.

As a general rule, the Competition in Contract Act of 1984 requires the Department of Defense to procure property and services through "full and open competition." 10 U.S.C. § 2304(a)(1)(A) (1988). There are several exceptions to this general rule. In particular, the rule does not apply when "a statute expressly authorizes or requires that the procurement be made through another agency or from a specified source...." *Id.* § 2304(c)(5). Two statutorily authorized exceptions are implicated in this case.

Sections 8(a) and 7(j) of the Small Business Act established the Minority Small Business and Capital Ownership Program, commonly known as the 8(a) program. *See* 15 U.S.C. §§ 636(j) & 637(a) (1988). In this program, the SBA enters into contracts with other agencies and then "arrange[s] for the performance of such procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns...." *Id.* § 637(a)(1)(B). To qualify for the 8(a) Program, a concern must be majority-owned and managed by members of a group subject to "racial or ethnic prejudice or cultural bias" who have themselves experienced certain economic barriers. *See id.* §§ 637(a)(4)—(a)(6). The Defense Department has a policy of partici-

---

1. In fact, the parties sought to file surreplies and surrebuttals. Leave to file such papers was, however, denied by Order of March 15, 1991.

pating in this program "to the greatest extent possible." 48 C.F.R. § 219.801(a) (1990). Indeed, it considers requirements for 8(a) treatment prior to considering eligibility for the Department of Defense's own minority set-aside program. *See id.* § 218.803(c) ("Notwithstanding the DoD unique SDB procedure, requirements will be reviewed initially for suitability for inclusion in the 8(a) Program....").

The Department's minority set-aside program was instituted in 1986. In that year, Congress set for the Department a goal of devoting 5 percent of its contracting budget in each of fiscal years 1987, 1988, and 1989 to

> (1) small business concerns, including mass media, owned and controlled by socially and economically disadvantaged individuals (as defined by section 8(d) of the Small Business Act (15 U.S.C. § 637(d)) and the regulations issued under such section), the majority of the earnings of which directly accrue to such individuals;
>
> (2) historically Black colleges or universities; or
>
> (3) minority institutions....

Pub.L. No. 99–661 § 1207, 100 Stat. 3816, 3973 (1986). In compliance with this Congressional mandate, the Defense Department regulations require, with some exceptions, that "the entire amount of an individual acquisition shall be set-aside for exclusive SDB participation if the contracting officer determines that there is a reasonably expectation that ... [o]ffers will be obtained from at least two responsible SDB concerns...." 48 C.F.R. § 219.502–72(a).

The 8(a) program and the Defense Department's SDB policy are potentially at odds with another procurement policy benefiting small businesses. Under FAR § 19.01 *et seq.,* certain acquisitions are set-aside solely for small business competition. The potential tension between small business set-asides and minority set-asides is resolved on an agency-by-agency basis:

> Once a product or service has been acquired successfully by a contracting office on the basis of a small business set-aside, all future requirements of that office or service not subject to simplified small purchase procedures shall, *if required by agency regulations,* be acquired on the basis of a repetitive set-aside.

*Id.* § 19.501(g) (emphasis added). The Defense Department gives "repetitive" small business set-asides priority over its SDB set-asides: Exclusive SDB participation is prohibited when "[t]he product or service has been previously acquired successfully on the basis of a small business set-aside." *Id.* § 219.502–72(b)(1) (citing 48 C.F.R. § 19.501(g)). Similarly, under SBA regulations, that agency will not "accept for 8(a) award proposed procurements not previously in the 8(a) program if

> (a) A solicitation has already been issued for procurement as a small business set-aside ...
>
> (b) The procuring agency has expressed publicly a clear intention to reserve the procurement as a small business or small disadvantaged business (SDB) set-aside ...
>
> (c) The SBA has made a written determination that acceptance of the procurement for 8(a) award would have an adverse impact on other small business programs or on an individual small business...."

13 C.F.R. § 124.309 (1990).

### B.

The contract at issue in this case is an interim procurement of warehousing services for the Extension Course Institute of the Air University. *See* Solicitation F01600–91–R0016 (Defendant's Exhibit G) [hereinafter, "Interim Solicitation"].[2] The Extension Course Institute provides correspondence courses for over 315,000 Air Force and other Department of Defense personnel that must be completed for pro-

---

**2.** *See* Defendant's Statement of Material Facts as to which There is No Genuine Issue ¶ 1; *see also* Plaintiff's Memorandum in Support of Its Cross–Motion for Summary Judgment at 2

("[A]ccepting the statements of fact of the defendant set forth in its filings in support of its motion for summary judgment.").

motion.[3] The Interim Contract requires the contractor to manage the Course Materials Division which provides study materials to participants and perform various warehousing tasks such as receiving, storing, packaging and shipping course materials, as well as managing the inventory.[4]

Until 1982, these tasks were performed by Government employees, but in 1982 a one-year contract was awarded to D.K. Associates on the basis of a small business set-aside.[5] In 1985, a similar contract was awarded to Excel Services, and in 1987, Young–Robinson was awarded the contract.[6] Although Young–Robinson has been certified as a small and disadvantaged business by the Small Business Administration,[7] it was awarded the "Old Contract" as the result of a solicitation issued under the small business set-aside acquisition procedures. *See* Contract No. F0016–88–C0014 (Defendant's Exhibit F) [hereinafter, "Old Contract."][8]

Performance under the Old Contract was to begin on November 1, 1987 and extended until September 31, 1988.[9] The Air Force also had several options for extending Young–Robinson's performance beyond that period. Specifically, under the contract, the United States had four options to extend performance of the contract at its discretion for one year at a time. *See* Old Contract at 3—6; *see also id.* at 101 (incorporating FAR and DOD FAR clauses). The contract also contains an extension-after-performance clause allowing the Government to "extend the then current contract performance period for not less than one month nor more than four months on the same terms and conditions as applicable to the then current performance period." *See id.* at 101 (Air Force FAR SUP 52.237–9000). If, however, the extension-after-performance option were exercised, the contract specified that the one-year option could no longer be exercised. *See id.* at 102 (Air Force FAR SUP 52.237–9500).[10]

Although Young–Robinson performed the Old Contract more than satisfactorily and the Air Force renewed its options in 1988 and 1989,[11] in 1990 the Air Force decided to resolicit the warehousing services Young–Robinson had been supplying as part of a modernization of Extension Course Institute. The ECI was contemplating moving the Course Materials Division to a new facility, installing a mechanized material handling system, and changing its computer inventory system from a Honeywell system to the Course Development and Student Administration Requisition (CDSAR) method.[12] In part because the Government expected the increased mechanization to reduce labor costs, it decided to resolicit the contract rather than renew Young–Robinson's option.[13] In April of 1990, Young–Robinson requested that the new contract be set-aside under the 8(a) Program.[14] The Air Force, however, determined that the 8(a) program did not apply because "[t]he ECI contract has historically been set aside for small business participation."[15] In August 1990, the Government exercised its extension-after-performance option, and on October 26, 1990 it

---

3. *See id.* ¶ 2.

4. *See* Affidavit of Desmond Wilson at 1–2.

5. *See* Declaration of Ramona N. Hicks ¶ 3.

6. *See id.* ¶¶ 4–5.

7. *See* Letter from June M. Nichols to George R. Young, III, February 13, 1989.

8. *See* Declaration of Ramona N. Hicks ¶ 5; Statement of Material Facts ¶ 5.

9. *See* Statement of Material Facts ¶ 5.

10. This "exercise of options" clause provides:

> Options of the type exercised in the clause "Option to Extend the Term of the Contract–Services," will not be exercised after any exercise of options of the type referenced in the clause entitled "Extension after Performance."

11. *See* Affidavit of George R. Young, III ¶ 23 (filed February 27, 1991).

12. *See* Declaration of Jerry F. Pugh ¶ 2; Statement of Material Facts ¶ 8.

13. *See* Declaration of Jerry F. Pugh ¶ 4.

14. Complaint ¶ 14.

15. Letter from Ramona Hicks to George R. Young, III, May 2, 1990, at ¶ 2.

issued solicitation No. F00600–90–R0032, the "Future Solicitation."[16]

Young–Robinson protested this solicitation on the grounds that it sought substantially the same services as those performed by Young–Robinson under the Old Contract.[17] The Air Force responded that the contract had been changed significantly enough that "the provisions of the existing contract will not adequately fulfill the Government's continuing needs."[18] Young–Robinson then sought the assistance of the SBA, but a representative of the SBA informed plaintiff that the agency "would not be allowed to accept under 8(a) due to previous history as a small business set-aside."[19] After this, Young–Robinson protested the solicitation to the contracting officer on the ground that, as a new requirement, the Future Solicitation should be set aside under the 8(a) program.[20] Considering the changes between the Old Contract and the Future Solicitation to be "nothing more than a new method of performing the old requirement," the contracting officer "did not ... consider this a new requirement."[21] Young–Robinson appealed that ruling to the Deputy for Small Business, but that appeal was rejected on November 28, 1990.[22] On December 3, Young–Robinson appealed to the General Accounting Office; that appeal is still pending.[23]

After deciding to withhold award of the Future Solicitation pending the GAO's resolution of Young–Robinson's appeal,[24] the Air Force issued the Interim Solicitation on February 1, 1991.[25] The Interim Solicitation took the form of an amendment to the Future Solicitation. Like the Future Solicitation, it was designated a 100% small business set-aside. Unlike the Future Solicitation, the Interim Solicitation deleted references to the new mechanized material handling systems with the sole exception of some related training in the operation of a vehicle in the new warehouse. *See* Interim Solicitation at 2. The Interim Solicitation also deleted references to the new computer inventory system. *See id.* It did, however, require the contractor to move much of the operations to the new warehouse. *See id.* The new moving and the training requirements account for approximately 10 percent of the Interim Solicitation's price.[26] Otherwise, the Interim Solicitation's requirements are the same as the Old Contract's.

On February 6, 1991, Young–Robinson protested this solicitation as well.[27] On February 12, the GAO rejected this protest on the ground that plaintiff's papers failed "to establish the likelihood that the agency's decision was improper." *Young–Robinson Associates, Inc.,* B–242868, slip op. (General Accounting Office February 12, 1991). On that same day, Data Monitor Systems, Inc., was awarded the Interim Contract, which it began to perform within the next week.[28] Young–Robinson now appeals that GAO decision, and it seeks an injunction against further performance of the Interim Contract by Data Monitor Systems, a declaration that the Air Force's solicitation and award of the Interim Contract was arbitrary and capricious, an order invalidating the Air Force's actions, and an

---

**16.** Statement of Material Facts ¶ 9.

**17.** *See* Letter from George R. Young, III, to Bob H. Key, October 29, 1990.

**18.** *See* Letter from Jerry F. Pugh to Young–Robinson Associates, Inc., November 7, 1990, at ¶ 1(a).

**19.** Letter from Donna H. Glen to George Young, November 14, 1990.

**20.** *See* Letter from George R. Young, III, to Bob Key, November 20, 1990.

**21.** Letter from Charlie H. Foster, Jr., to Young–Robinson Associates, Inc., November 21, 1990.

**22.** Letter from Harold R. Brown, Jr., to George R. Young, III, November 29, 1990.

**23.** *See* Statement of Material Facts ¶ 13.

**24.** *See* Declaration of Charlie H. Foster, Jr., ¶ 2.

**25.** *See* Statement of Material Facts ¶ 15.

**26.** *See* Statement of Material Facts ¶ 16.

**27.** *See* Letter from Theresa L. Watson to General Counsel, General Accounting Office, February 6, 1991.

**28.** *See* Statement of Material Facts ¶ 20.

order requiring the Air Force to solicit the interim warehousing services contract as an SDB set-aside.

### C.

■ The standard of review for procurement decisions is "arbitrary and capricious," which means that the contracting officer's determination may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *accord Kentron Hawaii Limited v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir. 1973); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971). In its complaint, Young–Robinson claims that the Interim Solicitation and award of the Interim Contract to Data Monitor Systems was contrary to law because the Interim Solicitation should have been procured through a small and disadvantaged business set-aside (SDB) rather than a small business set-aside, or, in the alternative, the award of the Interim Contract should be vacated because the requirements in that solicitation should have been procured through the SBA's section 8(a) program. Given the undisputed facts, neither claim can be maintained.

Young–Robinson's first claim—that the Interim Solicitation should have been an SDB set-aside—is precluded by Defense Department acquisition regulations. Because the warehousing services sought in that solicitation had been "previously acquired successfully on the basis of a small business set-aside," an SDB set-aside was not appropriate. 48 C.F.R. § 219.502–72(b)(1) (citation omitted). In an affidavit filed with its final reply brief, George R. Young, III, president and chief executive officer of Young–Robinson, asserts that the Administrator of the Old Contract informed him that the previous contractor for the warehousing services at the ECI was not a small business. Even assuming this assertion to be true, it does not raise a genuine issue because it is undisputed that the contract awarded to Young–Robinson was a small business set-aside. *See* Statement of Material Facts ¶ 5.

■ Young–Robinson has also failed to demonstrate that the Air Force decision not to procure the warehousing services under the 8(a) program was contrary to law. The SBA's regulations prohibit it from accepting proposed procurements if a solicitation has already been issued as a small business set-aside, if the procuring agency has clearly and publicly expressed an intent to reserve the procurement as a small and disadvantaged set-aside, or if the SBA has determined that procurement under the 8(a) program would have an adverse impact on a small business program or a particular small business. *See* 13 C.F.R. § 124.309. It is not immediately clear from these regulations how services previously performed by an SDB, but under a small business set-aside should be treated. The Air Force, however, rejected Young–Robinson's "request to have the new contract set aside under the 8(a) program ... on the basis that the Extension Course Institute (ECI) warehouse operations had historically been set aside for small business participation." Letter from Harold R. Brown, Jr., to George R. Young, III; *see also* Letter from Ramona N. Hicks to George R. Young, III, May 2, 1990, ¶ 2 (noting that "[t]he ECI contract has historically been set aside for small business participation"). A representative of the SBA concurred in this interpretation. *See* Letter from Donna H. Glen to George Young, November 14, 1990. Because that interpretation is a reasonable one not contradicted by the plain meaning of the regulations, it must be accepted. *See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Young–Robinson does not vigorously dispute this interpretation. Instead, pointing to the Air Force decision not to exercise its option under the Old Contract, Young–Robinson contends that the Interim Solicitation is not a repetitive solicitation, but rather a new and different requirement. In support of this contention it points to 13 C.F.R. § 124.309(c) which provides that the

expansion or alteration of an existing requirement shall be considered a new requirement where the requirement is

materially expanded or modified so that the ensuing requirement is not substantially similar to the prior requirement due to the magnitude of the expansion or alteration.

13 C.F.R. § 124.309(c). This passage is not, however, clearly applicable. It does not appear in 13 C.F.R. § 124.309(a), the SBA regulation cited by the Glenn letter and relied upon by Air Force officials. Instead, it appears in a subsequent regulation prohibiting 8(a) procurement where the SBA finds that such procurement would have an adverse impact upon a small business or small business program. *See id.* Moreover, even if it is assumed that this passage is instructive in distinguishing between repetitive acquisitions and new ones, Young–Robinson's contention would still have to be rejected because the Interim Solicitation is "substantially similar" to the Old Contract. The Interim Solicitation merely adds to the Old Contract some training and the moving of the warehousing operation to another site. The other 90% of the requirements under the new solicitation are the same as the requirements under the Old Contract. *See* Statement of Material Facts ¶ 16.

Nor does the fact that the Standard Industrial Classification (SIC) code for the warehousing activities used in the Interim Solicitation differs from that in the Old Contract establish that the Interim Solicitation contains a "new requirement." The SIC codes were changed in 1987, and although the concordance suggests that the corresponding new Code is 8744, rather than 7389, a review of the descriptions demonstrates that the latter code number is the proper one for warehousing services: SIC Code 8744 refers to "Facilities Support Management Services," such as operating prison facilities; SIC Code 7389 refers to the general residual category of "Business Services, Not Elsewhere Classified." *See Standard Industrial Classification Manual* (1987) *attached to* Exhibit 1, Affidavit of George R. Young, III, at 3, 6 (filed March 11, 1991). As a consequence, even under plaintiff's interpretation of the regulations, the Interim Solicitation must be set-aside for small business procurement.

Young–Robinson suggests that this result is unfair because on the one hand the Air Force refused to renew its option under the Old Contract because the new requirements were different from the requirements under the Old Contract, and on the other hand it refused to reserve the Interim Solicitation for minority participation because its requirements were not new. Whatever force this argument might have in connection with the Future Solicitation, it is misplaced in this case concerning the Interim Solicitation. The Air Force never represented that it would not award the Interim Solicitation to Young–Robinson because it contained different requirements. The Air Force did not retain Young Robinson after January 31, 1991 because after the Air Force exercised its extension-after-performance option in August 1990, it had no contractual authority to do so. *See supra* at 215. The Air Force was therefore bound by the Competition in Contract Act to procure the Interim Contract through "full and open competition." *See* 10 U.S.C. § 2304(a)(1)(A).

## D.

■ In addition to its stronger claim that the Interim Solicitation should have been procured through the 8(a) Program or set aside for exclusive SDB participation, Young–Robinson has also made the weaker claim that the Contracting Officer acted arbitrarily and capriciously by not even considering the possibility of a minority set-aside. This contention is unpersuasive. Young–Robinson repeatedly requested that the Future Solicitation be either an 8(a) procurement or an SDB set-aside, and those requests were repeatedly denied on the permissible ground that the Future Solicitation was a repetitive small business set-aside. *See supra* at 215–16. If the Air Force considered the Future Solicitation to be a repetitive solicitation, it follows that the Interim Solicitation, which was even more similar to the Old Contract, must also have been a repetitive solicitation.

Although its own complaint details the Air Force's consideration and rejection of

procurement through the 8(a) Program, *see* Complaint ¶ 18, Young–Robinson none-theless contends that the Government has admitted in open court that it did not con-sider a minority set-aside. The statement that plaintiff quotes, however, proves no such thing. Government counsel stated that "the contracting officer did consider it by not considering it, in the sense that he looked to exception (B)." Transcript of Proceedings on February 28, 1991, at 37. In other words, this statement represents that, convinced that the ECI warehousing services contract was subject to a repetitive set-aside, the contracting officer implicitly determined that the requirements in the Interim Solicitation could not be procured under the 8(a) Program or as an SDB set-aside. Young–Robinson's contention that this passage proves just the opposite, that there was no consideration of minority set-asides, is simply puzzling.

## E.

 Finally, the complaint urges that the award of the Interim Solicitation be vacated because the Air Force did not fol-low proper procedures for a small business set-aside. In particular, Young–Robinson observes that while the Interim Solicitation included SIC Code Number 7389 for the warehousing services, it failed to include the appropriate code for moving services. The relevant regulations provide that "[i]f different products or services are required in the same solicitation, the solicitation shall identify the appropriate small busi-ness size standard for each product or ser-vice." 48 C.F.R. § 19.303(b). Because it obtained a certification as a small business in the moving industry, Young–Robinson concludes that it was the only small busi-ness eligible to bid for the Interim Solicita-tion. This conclusion does not follow. A small business in the warehousing trade has $3.5 million or less in assets; a small business in the local trucking business has $12.5 million or less in assets. *See* 48 C.F.R. § 19.102 (chart). Thus, any busi-ness small enough to qualify as a small business in the warehousing trade was small enough to qualify as a small business in the local business trade, and error in the Interim Solicitation was harmless.

## II.

For the reasons stated above, an accom-panying order will grant defendant's mo-tion for summary judgment. That order will also deny plaintiff's cross-motion, its application for preliminary injunctive relief, and all other pending motions.

## ORDER

For the reasons stated in the accompany-ing memorandum, it is this 22nd day of March hereby

ORDERED:· that Defendant's Motion for Summary Judgment should be, and is here-by, granted; and it is further

ORDERED: that plaintiff's Application for Temporary Restraining Order should be, and is hereby, denied; and it is further

ORDERED: that Plaintiff's Cross Mo-tion for Summary Judgment or, in the Al-ternative, for Preliminary Injunction should be, and is hereby, denied; and it is further

ORDERED: that plaintiff's Emergency Motion for Telephone Conference should be, and is hereby, denied as moot; and it is further

ORDERED: that defendant's Motion for Leave to File Under Seal should be, and is hereby, denied as moot; and it is further

ORDERED: that Plaintiff's Motion for Leave to File Under Seal should be, and is hereby, denied as moot.